# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1885

_____

Berkley National Insurance Company, a/s/o
Lakes Community Cooperative

*Plaintiff - Appellant*

v.

Broan-Nutone, LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: February 10, 2026
Filed: August 11, 2026

_____

Before COLLOTON, Chief Judge, BENTON and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

A bathroom ceiling fan manufactured by Broan-Nutone (Broan) caused a fire in a gas station owned by Lakes Community Cooperative (the Cooperative). The Cooperative's insurer, Berkley National Insurance Company (Berkley), paid the Cooperative's claim for damages and brought this action against Broan as subrogee.

The district court[1] granted Broan's motion for summary judgment, finding Berkley failed to present sufficient evidence to support a manufacturing defect claim under Minnesota law. We affirm.

I.

On November 20, 2021, a Broan ventilation fan installed in the ceiling of the Cooperative's gas station restroom sparked a fire, causing $2,549,713.32 in damages. The fan was installed sometime before the Cooperative took ownership of the store in 2009. Berkley's expert witness, Lucas Choudek, opined in his report that "[t]he source of ignition was the heat produced within the motor winding [in the fan]," "which ignited the nearby combustible materials including electrical insulation, and any accumulated dust and lint." He further stated that "[t]he thermal protection device did not operate as intended and failed to disconnect electrical power" to prevent the windings from overheating. During his deposition, Choudek said he believed the "fan motor was operating at an abnormally high temperature," but he "d[id] not specifically know the mechanical reason why." Choudek did not offer any admissible evidence of a deviation between the fire-damaged fan and a fan in its flawless form.

The district court found that Choudek's "opinions do not create a trial-worthy manufacturing-defect claim" because Choudek was unable to "tether the [fan's] malfunction to a manufacturing defect or show how the at-issue fan deviated from a flawless product." Nor did "Choudek's opinions . . . show the defect existed when the at-issue fan left Broan's control." The court granted summary judgment to Broan, and Berkley appeals.

---

[1]The Honorable Eric C. Tostrud, then United States District Judge for the District of Minnesota, now Chief Judge.

II.

We review the district court's grant of summary judgment de novo, drawing all reasonable inferences in Berkley's favor. Boda v. Viant Crane Serv., LLC, 42 F.4th 935, 938 (8th Cir. 2022).

To prove a manufacturing defect claim under Minnesota law,[2] a plaintiff must show "(1) a product was in a defective condition unreasonably dangerous for its intended use; (2) the defect existed at the time the product left the defendant's control; and (3) the defect proximately caused the plaintiff's injury." Duxbury v. Spex Feeds, Inc., 681 N.W.2d 380, 393 (Minn. Ct. App. 2004) (citing Bilotta v. Kelley Co., 346 N.W.2d 616, 623 n.3 (Minn. 1984)). The claim may be proven by direct or circumstantial evidence. Boda, 42 F.4th at 939 (analyzing whether plaintiff submitted direct evidence); Int'l Fin. Servs., Inc. v. Franz, 534 N.W.2d 261, 266 (Minn. 1995).

Berkley presented no admissible evidence of a specific deviation between the at-issue fan and a flawless exemplar, but this shortcoming is not necessarily fatal to its claim. Lee v. Crookston Coca-Cola Bottling Co., 188 N.W.2d 426, 434 (Minn. 1971) (to support a strict liability manufacturing defect claim, a plaintiff is not required to prove "specifically what defect caused the incident."); Int'l Fin. Servs., 534 N.W.2d at 266 ("[G]enerally no specific defect need be alleged, and a defective condition can be proved by circumstantial evidence.") (quoting Nelson v. Wilkins Dodge, Inc., 256 N.W.2d 472, 476 (Minn. 1977)); Webb v. Ethicon Endo-Surgery, Inc., No. Civ. 13-1947, 2014 WL 7213202, at *7 (D. Minn. Dec. 17, 2014) (allowing manufacturing defect case to proceed to jury where at-issue product was lost or discarded). Nevertheless, while Berkley is "not necessarily required to prove 'a specific defect[,]' . . . [it] is required to present evidence showing that the product 'was defective *when it left the defendant's control*.'" Am. Fam. Ins. Co., S.I. v.

---

[2]Only Berkley's strict liability manufacturing defect claim is before us, and the parties agree Minnesota law applies.

-3-

Pecron, LLC, No. 21-cv-1749, 2023 WL 8654202, at *8 (D. Minn. Dec. 14, 2023) (first quoting Lee, 188 N.W.2d at 434; and then quoting Boda v. Viant Crane Serv., LLC, No. 19-cv-1437, 2021 WL 4444733, at *9 (D. Minn. Sep. 28, 2021)). In Minnesota, a plaintiff "may rely upon circumstantial evidence from which it can reasonably be inferred that it is more probable than not that the product was defective when it left [the] defendant's control." Lee, 188 N.W.2d at 434. However, "the evidence may not be such that a jury would need to engage in speculation." W. Sur. & Cas. Co. v. Gen. Elec. Co., 433 N.W.2d 444, 447 (Minn. Ct. App. 1988).

Berkley relies on evidence indicating that the fire started because the fan overheated and the thermal protection device failed to de-energize the fan. Even if we assumed this evidence shows a defect, Berkley has submitted no admissible evidence to show by a preponderance that this defect existed at the time the fan left Broan's control. See Lee, 188 N.W.2d at 432 ("[T]he mere fact of injury during use of the product usually is insufficient proof to show existence of a defect at the time defendant relinquished control."); Swanson v. Timesavers, Inc., Nos. C7-96-1211, C7-96-1600, CX-96-1798, 1997 WL 104917, at *3 (Minn. Ct. App. Mar. 11, 1997) ("Strict liability manufacturing flaw cases focus on the condition of the product at the time the manufacturer distributes it[.]"). The at-issue fan was installed at the Cooperative more than ten years before the fire, a significant period providing "substantial opportunity" for mishandling or misuse. Pecron, 2023 WL 8654202, at *8 (quoting Boda, 42 F.4th at 939); see also W. Sur. & Cas. Co., 433 N.W.2d at 449 ("[W]here lapse of time and substantial opportunity for mishandling of a product by third parties make it equally probable a defective condition developed after leaving the defendant's control, neither the principles of res ipsa loquitur nor strict liability will support a finding of liability.").

Berkley counters that the fan's location in the bathroom ceiling supports the conclusion that few people likely interacted with it during its lifespan. According to Berkley, "Broan needs actual evidence that makes it more likely that the defect was not present at the time of manufacture." But this assertion effectively shifts the burden to show mishandling to the defendant, which Berkley may not do—even at

summary judgment. See W. Sur. & Cas. Co., 433 N.W.2d at 449. Moreover, Berkley's argument ignores its own expert's opinion that "*accumulated* dust and lint" were in the fan at the time of the fire. As the district court noted, Berkley's expert offered no evidence suggesting the dust and lint were in the fan at the time it left Broan's control or that dust and lint built up because of an alleged manufacturing defect. Berkley does argue that Broan knew dust and lint would accumulate due to the fan's design, but that is a design defect argument not relevant to a manufacturing defect claim. Lee, 188 N.W.2d at 434 ("[U]nder both the theory of negligence and the theory of strict liability, the injured party, in practical effect, has the burden of proving a defect at the time the product left the manufacturer's control."); Bilotta, 346 N.W.2d at 621–22 (explaining the different factors relevant to manufacturing and design defect cases). And Berkley's expert's theory that a buildup of lint insulated the thermal protection device from increased temperatures inside the fan's motor belies Berkley's claim that the defect alleged existed at the time the fan left Broan's control. See Restatement (Third) of Torts: Products Liability § 3 cmt. d (A.L.I. 1998) ("Evidence may permit the inference that a defect in the product at the time of the harm-causing incident caused the product to malfunction, but not the inference that the defect existed at the time of sale or distribution. Such factors as the age of the product . . . may have introduced the defect that causes harm.").[3]

Without evidence the alleged defect in the fan existed at the time it left the defendant's control, the district court properly granted summary judgment to Broan.

_____

[3]We have noted that "Minnesota courts often consult" the Restatement (Third) of Torts. Berkley Reg'l Ins. Co. v. Doe Battery Mfr., 173 F.4th 989, 992 (8th Cir. 2026) (citing Duxbury, 681 N.W.2d at 387).